ANDREW J. ANDERSON

*v.*

THE CHICAGO TRUST AND SAVINGS BANK *et al.*

*Opinion filed February 21, 1902—Rehearing denied April 4, 1902.*

1. FRAUD—*one electing to affirm fraudulent transaction cannot subsequently seek rescission.* One who has been fraudulently led into the purchase of stock in a corporation may, after a full knowledge of the fraud, elect to affirm the sale, and after such election is made cannot be allowed to shift his position and seek to rescind the sale.

2. SAME—*when attempt to rescind must be treated as having been first made at time bill was amended.* If a bill for accounting and relief, setting up all the facts showing the complainant's full knowledge of the fraud whereby he was induced to purchase stock in a corporation, seeks to have the shares of stock delivered to complainant and prays an injunction against the disposal of the stock by the defendants, which is granted and the stock tied up for two years until it was found to be worthless, an attempt to rescind the sale by amending the bill after that time must be treated as having been first made at the time of making the amendment, and does not relate back to the filing of the original bill, so far as the affirmance of the contract is concerned.

3. SAME—*sale of stock in a corporation may be affirmed although its organization is used to aid a fraudulent scheme.* If the object of a corporation, as declared by its charter, is a lawful one, the fact that the organization of the corporation was part of a fraudulent scheme does not prevent a purchaser of stock from ratifying his purchase with full knowledge of the facts.

*Chicago Trust and Sav. Bank* v. *Anderson,* 93 Ill. App. 347, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. EDMUND W. BURKE, Judge, presiding.

The following is a sufficient statement of the case, made by the Appellate Court:

"The bill of complaint as first exhibited alleged that appellee applied to the appellant bank, of which appellant Tolman was president, for a loan of $1500, and offered good security therefor; that Tolman declined to make the loan unless the appellee would first obtain the guaranty of the appellant Midland Company, and to that end appellee was obliged to purchase from Tolman five shares of the capital stock of said Midland Company at the aggregate price of $800; that the par value of said stock was $500; that Tolman represented to the appellee that the actual market value of the stock was $160 per share, or $800 for the five shares; that in order to procure the loan of the $1500 appellee was further required to make his promissory note for $500, and he delivered same to Tolman; that appellee thereupon received from the bank the $1500 borrowed, (for which his note was given,) less several months' interest upon the same, and less interest for the same number of months upon the $500 note; that interest was computed at eight per cent, and in addition thereto one per cent per month, or twelve per cent per annum, was required for the guaranty of the Midland Company upon the $1500 note; that there was also deducted from the $1500 loan $80 as a payment upon the purchase of the Midland Company stock; that appellee received only about $1340 of the $1500 supposed to be borrowed; that the $500 note was given in order to enable the appellee to open an account by deposit of that amount in the appellant bank, which Tolman required as a further condition to the making of the $1500 loan; that the $500 credited to appellee upon his account with the bank was at once covered by a check for the same amount which Tolman required appellee to make and deliver to Tolman; that the entire transaction was a scheme and device of Tolman to obtain from appellee payment of an usurious rate of interest upon his loan of $1500 and

to compel appellee to buy five shares of the stock of the Midland Company; that said stock was in fact worth little or nothing; that by payments upon the notes given and for the guaranty of the Midland Company, and by renewal of notes and payments thereon, appellee has paid to appellants $1100 or $1200 as interest, more than two-thirds of which was usurious interest, which should be set off against appellee's note of $500 still held by appellants, and that upon an accounting it would be found that appellants were indebted to appellee in a large sum of money for moneys paid in excess of indebtedness, and that appellee was entitled to the five shares of Midland stock for which he had fully paid. The bill prayed for relief as follows: For an accounting; that appellants be decreed to pay to appellee the moneys paid by him for guaranties by the Midland Company; that the $500 note still held by appellants be ordered canceled and surrendered; that appellee's certificate of the five shares of Midland stock be surrendered and delivered to him, and for an injunction restraining appellants from disposing of the $500 note, or the five shares of capital stock of the Midland Company owned by appellee. An injunction as prayed was issued.

"Upon answers denying the material allegations of the bill, and replications thereto, a reference was had to a master in chancery, who heard evidence and reported, *inter alia*, that appellee was entitled to the five shares of Midland Company stock as the owner thereof. After this report a decision by the superior court of Cook county, Illinois, in a suit by the People, determined that the franchise of the Midland Company was forfeited, and judgment of ouster was entered against it.

"By subsequent amendment the bill of complaint was so modified that instead of praying for the surrender of the five shares of the stock of the Midland Company to appellee, as the owner thereof, it prayed that the sale of the stock to appellee be decreed to have been a fraudu-

lent sale, and that upon the accounting appellee be credited with the amounts paid upon purchase of the stock, with interest. This amendment was made after the report of the master upon the bill as originally framed, recommending, in effect, that appellee be decreed to be the owner of the stock, and after the stock of the Midland Company had been rendered worthless by the decision of the superior court in the *quo warranto* proceeding.

"The bill of complaint, with the various amendments thereto and supplemental allegations, was finally reduced to the form of a last amended bill, referred to in the briefs as the 'engrossed bill,' and upon answers to it and replications another reference was had to a master in chancery. The master made his final report, finding that complainant was entitled to a rescission of the purchase by him from Tolman of the shares of stock in the Midland Company, and to recover the purchase price; also to recover moneys he paid the Midland Company, from time to time, for guaranteeing his commercial paper; also that he had paid usury upon the indebtedness evidenced by the note held by the bank and was entitled to credit therefor, and recommending that complainant be given leave to amend his engrossed bill, and on that being done, the court enter a decree against all the defendants for an entire sum of $1647.90, made up of the amounts he paid Tolman for the stock, the company for its guaranties and the bank for usury, less the amount of his note held by the bank.

"The amendment suggested by the master's report, and subsequently made by the appellee, was an allegation that appellee had 'relied entirely upon the statements and representations made by Tolman to him,' inducing the purchase of stock, and 'never learned of their falsity and fraudulent character, and of the fraudulent concealments, until a long time thereafter, to-wit, immediately and within five years next preceding the filing of the original bill herein as to such matters therein stated,

and immediately and within five years next prior to the filing of the amended bill herein as to such matters as are therein stated.'

"The answers of appellants set forth the filing of the original bill of complaint as showing appellee's knowledge of the facts at that time, and as constituting an estoppel upon him to claim a rescission by his amended bill, and also averred that appellee was guilty of such *laches* as barred the relief prayed by way of a rescission of the contract of purchase of the Midland stock.

"The chancellor, upon the coming in of the master's report and after the amendment last above indicated, entered a decree in effect ordering a rescission of the contract of purchase of the Midland stock; the surrender of the $500 promissory note made by appellee and held by appellants, and a money decree against appellants for $1647.90, being the aggregate of the moneys paid by appellee to appellants, in the course of the transactions, as usurious interest upon the loan, as payments to the Midland Company for its guaranties and as purchase price of the five shares of Midland stock.

"The items as found by the master upon the accounting, and which go to make up the amount of the money decree, are in substance as follows:

| | |
|---|---|
| Amount paid Tolman on purchase of Midland stock ... | $1168.17 |
| Amount paid Midland Company for its guaranties .... | 794.74 |
| | $1962.91 |
| Amount due to bank from appellee upon $1500 loan, less usurious excess of interest (not including payments for guaranty by Midland Company)........... | 315.01 |
| Leaving balance found due to appellee ............... | $1647.90 |

"From the decree this appeal is prosecuted."

The Appellate Court for the First District, by Mr. Justice Sears, delivered the following opinion:

"Facts very like to the facts presented upon this record were considered by the Supreme Court in *Murray* v. *Tolman*, 162 Ill. 417. The decision of the Supreme Court

in that case is clearly applicable and controlling in this case upon questions as to a liability of appellants and the propriety of relief. In one respect, however, viz., in the matter of the attempted rescission by appellee of the contract of purchase by which he bought five shares of the Midland Company stock, the case now considered differs from the *Murray case*. So far as the decree finds, upon the evidence, that the entire transactions conducted by Tolman on behalf of the bank and the Midland Company were a part of one scheme and device, participated in by Tolman, the bank and the Midland Company, to obtain usurious interest from appellee, the facts support such finding, as did the facts in the *Murray case*, and the decision of the Supreme Court that upon such facts Murray was entitled to relief is conclusive of the propriety of this decree in like respect. The substance of the decision in the *Murray case* is, that the organization of the Midland Company was a fraudulent device gotten up by Tolman for an unlawful purpose, and that Murray, who, like the appellee, was one of the defrauded borrowers of the bank and investors in the Midland Company stock through inducement of Tolman, was entitled, by reason of the false and fraudulent representations of Tolman, to be relieved of his purchase of stock thus made.

"It would unnecessarily extend this opinion to recite all the facts established by the evidence. It is enough to state that the material allegations of the bill of complaint are sustained by the evidence, and that the false and fraudulent representations of Tolman in his dealings with appellee are sufficiently alike to the conduct disclosed in the *Murray case* to make the latter case controlling here upon the question of appellee's right to relief.

"The affirmance of the decree of the circuit court, which found that the moneys paid by the victim for interest and for guaranties by the Midland Company were all to be treated as usurious interest, is decisive of the correctness of the decree now reviewed, so far as it al-

lows appellee relief against the usury of his payments of
interest to the bank and for guaranties to the Midland
Company. In the *Murray case* it was also held that Mur-
ray had not been guilty of *laches*, but had without unrea-
sonable delay after a discovery of the facts filed his bill
asking for the relief which was ultimately granted. But
in the case here there is an element which was not in the
*Murray case*, and upon which the decision in the *Murray
case* does not bear, viz., the election of the appellee, after
a full knowledge of all the facts which constituted the
fraud practiced by Tolman, to nevertheless affirm his pur-
chase of the Midland Company stock. By his original
bill of complaint, filed February 17, 1892, appellee set up
substantially all the facts constituting fraud, and while
praying to be relieved of the payment of an usurious rate
of interest, yet elected to affirm the purchase of the stock.
To this end he sought and obtained preliminary injunc-
tion, by which, for more than two years, the appellants
were enjoined from making any disposition of the stock
in question. By his prayer for relief he asked, in effect,
that he be decreed to be the owner of the stock and that
it be surrendered to him. There was a reference of the
cause to a master in chancery, and appellee obtained
from the master a report which found these and other
allegations of the bill sustained, and which recommended
the relief prayed as to a surrender of the five shares of
Midland Company stock by appellants to appellee. It
was only in May of 1894, after appellee had tied up the
five shares of stock for more than two years by the order
of injunction which he had obtained, that appellee under-
took to shift his position and ask for a rescission of the
contract which he had up to that time desired to confirm.
If it appeared from the evidence that knowledge of facts
constituting the fraud had reached appellee after the
making of his election to affirm the contract, a different
question would be presented. The attempt to shift his
position and to elect to rescind the contract was first

made more than five years after the transactions were entered into by appellee and Tolman, in 1888. In 1888 he declared to Tolman that he was 'in his (Tolman's) clutches.' In this intervening period appellee has received commissions from the Midland Company for bringing to it other persons who became investors in its stock. In 1892 he joined in another suit brought in the same month and just prior to the filing of the original bill in this case, by which the ownership of appellee of the shares of Midland stock was asserted and relief asked upon the basis of such ownership, and in the original bill filed herein he asserted that ownership and sought and obtained temporary relief by way of injunction, which continued over a period of more than two years. These facts constitute an election by the appellee, after a full knowledge of the fraud, to affirm the sale which he might have rescinded but did not wish to rescind. One who has thus been led into a transaction by means of fraud, may, if he choose, after a full knowledge of the fraud, yet elect to affirm the contract, and after such election is once deliberately made, with full knowledge of all the facts, he will not be allowed to shift his position and seek a rescission. Story on Sales, (4th ed.) 558a; Benjamin on Sales, (6th Am. ed.) sec. 452 et seq.; 2 Chitty on Contracts, (11th Am. ed.) p. 1037; 1 Beach's Mod. Eq. sec. 76; 2 Pomeroy's Eq. Jur. sec. 897; Campbell v. Fleming, 1 Ad. & El. 40; Herrington v. Hubbard, 1 Scam. 569; Greenwood v. Fenn, 136 Ill. 146; Brown v. Brown, 142 id. 409; Day v. Fort Scott Investment Co. 153 id. 293; Brady v. Cole, 164 id. 116; Sutter v. Rose, 169 id. 66; Kellogg v. Turpie, 2 Ill. App. 55; Daniels v. Smith, 15 id. 339; Brumbach v. Flower, 20 id. 219; Streator Tile Works v. Coe, 53 id. 483; Farwell Co. v. Garrett, 88 id. 182.

"In Campbell v. Fleming, supra, Littledale, J., said: 'No doubt there was, at the first, a gross fraud on the plaintiff, but after he had learned that an imposition had been practiced on him he ought to have made his stand. Instead of doing so he goes on dealing with the shares,

and, in fact, disposes of some of them. Supposing him not to have had, at the time, so full a knowledge of the fraud as he afterwards obtained, he had given up his right of objection by dealing with the property after he had once discovered that he had been imposed upon.'

"In *Brumbach* v. *Flower, supra,* this court held that a defrauded vendor, by bringing assumpsit to recover the price of goods obtained through purchase by fraudulent means, was not precluded from dismissing the assumpsit suit and thereafter maintaining case for deceit in inducing the vendee to make the contract of sale. The Supreme Court held to the same doctrine in the same case upon appeal from a later trial. (*Flower* v. *Brumbach,* 131 Ill. 646.) In that case this court, speaking through Mr. Presiding Justice MCALLISTER, said: 'It is true that by bringing the action of assumpsit the plaintiff elected to affirm the contract. That probably would preclude him from afterward maintaining trover or replevin for the goods, because either of these actions would be based upon the theory that he had elected to rescind the contract.' The effect of the decisions in the *Brumbach case,* in this and the Supreme Court, is to hold that assumpsit for purchase price and case for deceit in inducing the sale are not based upon conflicting positions, as neither is in disaffirmance of the contract. The instituting of a suit to have the contract enforced is a deliberate choice of the party so seeking to affirm the contract. *Connihan* v. *Thompson,* 111 Mass. 270.

"The clear distinction between this case and the *Murray case* in the matter of the right to a rescission becomes apparent when the language of the decision in that case is noted. In that case Mr. Justice CARTER, speaking for the court, said: 'It is, however, among other things, insisted that Murray has been guilty of *laches,* and for that reason is not entitled to relief. We cannot so find from the record. There has been no unreasonable delay, after ascertainment of the facts, in filing the bill. It does not

appear that the rights of any third party will be preju-
diced, nor is it perceived how Tolman is injured by the
delay.' This determination bears upon the question of
*laches* only, and as applied to facts different from the
facts of this case. In the *Murray case* the bill was filed
within a much shorter period after the right to relief was
known. Here more than five years intervened between
the fraudulently procured purchase and the amendment
to the bill by which a rescission was prayed. But the
principle which controls here is not so much that appel-
lee has been guilty of *laches*, but that with knowledge of
the facts he deliberately affirmed the contract and kept
appellants from control of the property, by the injunc-
tion order, for two years before deciding to rescind.

"The attempt to elect a rescission must be treated as
first made at the time of the amendment of the bill, in
1894. It does not relate back, in its effect, to the filing
of the original bill, so far as the question of affirmance
or disaffirmance of the contract is concerned. *Brown* v.
*Brown*, 142 Ill. 409.

"We are therefore of opinion that the decree should
be affirmed in so far as it affords relief against the usuri-
ous interest paid by appellee, and reversed in so far as
it decrees a rescission of the contract and a recovery of
the amount of the purchase price. As no relief is per-
mitted by way of a recovery of money paid as usury, re-
lief can be granted only to the extent of the application
of usurious interest to the extinguishment of the debt
due from appellee to the bank. *Hadden* v. *Innes*, 24 Ill.
382; *Tompkins* v. *Hill*, 28 id. 519; *Perkins* v. *Conant*, 29 id.
184; *Manny* v. *Stockton*, 34 id. 306; *Ramsey* v. *Perley*, id. 504;
*Pitts* v. *Cable*, 44 id. 103; *Lake* v. *Brown*, 116 id. 83; *Mason* v.
*Pierce*, 142 id. 331.

"Treating the payments for guaranties by the Midland
Company as usurious interest paid upon the $1500 loan,
the usurious excess of interest paid fully extinguishes
liability on that loan.

"In so far as the decree of the circuit court orders that the promissory note for $500 made by appellee and held by appellants be surrendered it is affirmed, and in so far as the decree orders a recovery of $1647.90 against appellants it is reversed, the costs in this court to be paid one-half by appellants and one-half by appellee."

BULKLEY, GRAY & MORE, for plaintiff in error.

CRATTY, JARVIS & CLEVELAND, for defendants in error.

Per CURIAM: The complainant in the bill, dissatisfied with the judgment of the Appellate Court, has brought the record for review to this court by writ of error, and assigns for error that the Appellate Court should not have reversed that part of the decree of the circuit court which adjudged that the defendants pay to the complainant the sum of $1647.90, with interest from December 5, 1896. This item was made up of purchase money paid for the five shares of Midland stock and interest, and balance of amount paid that company for its guaranties of notes given by him to the bank. Defendants in error also assign cross-errors. After full consideration of the case we are of the opinion that the judgment of the Appellate Court is correct and should be affirmed for the reasons stated in the opinion of that court, which opinion we hereby adopt.

The principal one of the errors assigned, relied on by plaintiff in error, is, that the Appellate Court erred in holding that he had ratified the purchase of the Midland stock after he had learned of the fraud which had been practiced upon him by Tolman, and had elected to retain said stock, and that he could not thereafter rescind such sale. The point made is, that the Midland Company was a mere fraudulent device gotten up by Tolman to cheat and defraud his customers, and that its shares of stock were consequently a mere sham and fraudulent pretense,

and that the purchase and sale of such shares could not, therefore, be ratified. In support of this view the plaintiff in error cites *Murray* v. *Tolman,* 162 Ill. 417, where, in speaking of the Midland Company, it was said: "The organization of the company was itself a fraudulent device gotten up by Tolman for an unlawful purpose." We have no doubt, from the evidence in this case, that we were correct in that statement made in the former case. But it does not follow that the certificate of incorporation of the company issued by the State was void or that the shares of stock issued by the company were void. The company had simply been organized by Tolman and used for an unlawful and fraudulent purpose. The object of the corporation, as declared by its charter, was a lawful one, and it might have been organized for and devoted to a lawful business. The charter was not a forgery, neither were the certificates of stock, and we cannot say that they were of no value and could not have lawfully been bought and sold. That being so, it was not wholly immaterial, as counsel seem to contend, who had or retained such shares. The plaintiff could not rescind the sale to him of such shares and still retain them. The law governing the right to rescind for fraud was as applicable to this transaction as to any other, and when, after sufficient knowledge of such fraud, he elected to claim the shares of stock and had Tolman enjoined from disposing of them he waived his right to rescind. When he enjoined Tolman from disposing of them he evidently thought they were of some value to him, and the record shows nothing to the contrary.

The judgment as entered up in the Appellate Court is not altogether correct in form, but we do not deem the error in that respect sufficient to justify a reversal, and it will therefore be affirmed.          *Judgment affirmed.*