## Chicago Trust & Savings Bank et al. v. David M. Ball, Ex'r.

1. LACHES—*Where One Fraudulently Induced to Purchase Stock is Not Estopped By.*—Where a party is fraudulently induced to purchase stock and it does not appear that he had knowledge of the facts constituting the fraud under which he was induced to purchase such stock any considerable time before he filed his bill to set aside such purchase, he is not estopped by laches from asking for and obtaining a setting aside of such purchase more than five years after it was made.

2. FRAUD—*One Defrauded May Elect to Affirm the Transaction.*— One who has been led into a transaction by means of a fraud, may, after a full knowledge of the fraud, elect to affirm the contract; and such an action once deliberately made, with full knowledge of all the facts, will prevent a shifting of his position and an attempt to rescind that which he has once affirmed.

Bill for an Injunction.—Appeal from the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge presiding. Heard in the Branch Appellate Court at the October term, 1900. Affirmed. Opinion filed June 17, 1903.

The original bill in this case was filed by Joseph Charboneau against the appellants, Chicago Trust & Savings Bank, Daniel H. Tolman and the Midland Company. By a supplemental bill the appellant Cornelia T. Williams, and Dolmon W. Norton, were made defendants. Intermediate the hearing before the master and the hearing upon the master's report, the complainant, Charboneau, died. His

death was suggested and the cause ordered to proceed in the name of appellee as the executor of his last will.

The original bill, filed February 26, 1892, was verified by complainant, and proceeds upon the theory that appellee bought from Tolman five shares of the company's stock; that the complainant then gave his note for $750 for a loan; that this loan was largely tainted with usury but that it had been fully paid and settled; that subsequently the complainant made a new loan of $500 from the bank, pledging as collateral therefor his five shares of stock, which note is outstanding; that complainant purchased the stock from Tolman and was induced to make the purchase by fraudulent representations, setting up in detail what those representations were claimed to be; that Tolman agreed, when he sold the stock to complainant, to buy it back; that complainant fears whichever of the defendants holds his stock will sell it and that the officers of the company will transfer it on the books of the company; that whichever of the defendants holds the stock and note will endeavor to dispose of the stock and take judgment on the note; that the holder of the stock, whoever that may be, holds it subject to the rights of complainant, and if the stock has not already been transferred he fears the defendants will sell or pretend to sell the same without notice and for a sum much less than its real value; that the moneys paid by complainant for guarantees of the company were without consideration; and prays for an account as to usury, and the moneys paid for guarantees; for the surrender of the outstanding note and the stock to him; that the defendants discover who holds the certificate for said ten shares of stock; that the company may discover what persons appear by its books to be the owners of the stock and that the defendants be enjoined from collecting the $500 note and from selling or otherwise transferring or disposing of the five shares of stock, and that if said stock is sold it may be sold under decree of court and for general relief.

On this bill the complainant on March 26, 1892, obtained an injunction restraining the defendants and each of them,

among other things, from assigning or transferring the $500 note, and from selling, transferring or disposing of the complainant's stock in the company.

The master by his report found that the $750 note given for the loan at the time of the purchase of the stock was settled and paid; that the $500 outstanding note was for a loan by Williams under the name of Merchants' Discount Company to the complainant; that the complainant deposited his five shares of stock as collateral to that loan; that Norton was a *bona fide* purchaser before maturity of the note from Williams and was the holder of such note and of the stock as collateral security thereto; that Williams was but an instrument or agent of Tolman or the bank; that the moneys paid by the complainant to the company for guarantees were without consideration; that Tolman sold the stock to the complainant; that complainant was induced to purchase the stock by false representations by Tolman; that the company was a fraudulent device; that the defense of laches was not sustained; that the bill was not multifarious; that Tolman, the bank and the company as to the complainant should be treated as parts of one institution and left to adjust their equities among themselves; that complainant in his original and supplemental bill set up substantially the same facts as to fraud in the purchase of the stock and the fraudulent character of the Midland Company as he did in his engrossed bill, but that he did not in his original and supplemental bills necessarily claim to be the owner of the stock; that possibly he only wanted to obtain possession of it so he could tender it back in an appropriate proceeding, and therefore he did not elect by his original and supplemental bills to treat the stock as his own, and hence the defense of election should not prevail; that the engrossed bill is defective in that it does not show when the complainant discovered the alleged fraud upon him; and recommends that he be permitted to amend his bill, and in case he does not, that the bill be dismissed, but if he does amend the bill to conform to the report, that a decree be entered in favor of the complainant and against

the bank, Tolman, the company and Williams for $1,340, being the amount, with interest, which the master finds the complainant paid Tolman for the company's stock, amounting to $1,117.92, the amount, with interest, which the complainant paid to the Midland Company for its guarantees on his paper, and the excess above legal interest which Williams received for interest on the $500 note, amounting to $222.63, making the total of $1,340.55, and that Norton on the payment to him of the amount due on his judgment on the $500 note deliver to the complainant his certificate of stock and satisfy said judgment, and that the costs be taxed against the defendants except Norton.

On December 15, 1894, two years and ten months after the original bill was filed and the preliminary injunction obtained, and two years and six months after the supplemental bill was filed, and after the greater part of the testimony had been taken before the master, the complainant by leave of court filed his engrossed bill, verified by C. E. More, in and by which he reiterated in substance the allegations of his original and supplemental bills and added that on November 10, 1894, the charter of the company had been forfeited in a quo warranto proceeding which had been instituted in the Superior Court on June 2, 1892, and had been pending there ever since. By his prayer to this engrossed bill the complainant adhered substantially to the prayers of his original and supplemental bills as to his outstanding note and the moneys paid by him to the company for guarantees, but changed such prayer as to the stock by offering to surrender it, and praying for a rescission of his purchase thereof.

June 28, 1900, the court entered its final decree overruling the objections to the master's report and approving the report and finding from the report and the evidence taken before the master that there was due from the bank, Tolman, the company and Williams, jointly and severally, $1,340.55 for money unlawfully and fraudulently obtained by them from Charboneau in his lifetime; that the $500 note was transferred by the defendants, or some of them, to

Norton, and Norton entered judgment thereon against Charboneau for $525 and costs; that Norton should receive $538 from complainant as of May 31, 1892; that the five shares of stock should be surrendered and delivered to Tolman, the bank, the Midland Company or Williams, and that the name of Charboneau, and appellee as his executor, should be stricken from the books of the company, and decreeing that Tolman, the bank, the company, and Williams are jointly and severally liable to complainant for $1,340.55, with interest from December 5, 1896, amounting to $1,577.50, and that they, or some of them, pay the complainant upon surrender to him or them of said certificate of company's stock the sum of $1,577.50 with costs taxed and to be taxed, and upon default in such payment the complainant have execution therefor, and that contemporaneously therewith out of the money so received by the complainant he pay Norton the amount of such judgment with costs and interest amounting to $753.20, and upon payment of such sum Norton satisfy said judgment, and the five shares of company's stock be surrendered to Tolman, the bank and Williams, and that the company strike from its records as a stockholder the name of Charboneau, and complainant as his executor.

CRATTY, JARVIS & CLEVELAND, attorneys for appellants.

BULKLEY, GRAY & MORE, attorneys for appellee.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

This case arose out of transactions had by the complainant, Joseph Charboneau, for the greater part with the principal defendants to the case of Chicago Trust & Savings Bank v. Anderson, reported in the 93d Ill. App., at page 347, and in 195 Ill., at page 341; and the same defendants to Tolman v. Coleman, 104 Ill. App., page 70, and the same defendants to Chicago Trust & Savings Bank et al. v. Shurtleff, opinion filed in this court November 13, 1902; and defendants also in Tolman v. Murray, 54 Ill. App, 420, 162 Ill. 417.

As to the charges of usury, the purpose for which the Midland Company was created and used, the relations of Tolman to the bank and the Midland Company, together with the fraudulent representations and practices by which the complainant, Charboneau, was induced to purchase stock of the Midland Company, the facts of this case are very similar to those set forth in the opinions filed in the various cases heretofore mentioned, save that the loan was obtained and the purchase made in the present case by a different individual; and the amount of stock purchased, money borrowed and usurious interest paid in the present case are peculiar to it.

So great is the similarity between this case and those mentioned which have preceded it, that if the decree herein rendered were no broader than those sanctioned by this and the Supreme Court in the cases mentioned, there would remain no question of law for the consideration of this court as to the present controversy.

Upon the original bill in this cause, filed February 26, 1892, an injunction was issued restraining the then defendants, the Chicago Trust & Savings Bank, Daniel H. Tolman and the Midland Company, from assigning and transferring a $500 note theretofore given by Charboneau to the bank and from selling or disposing of five shares of stock of the Midland Company purchased by him from it through Tolman, for which stock Charboneau then promised to pay $750, and which stock Tolman, at the time of this sale to Charboneau, agreed to buy back from him at any time at the price of $600.

June 4, 1892, Charboneau filed a supplemental bill making Norton and Williams parties defendant. The first loan by Charboneau and the purchase of stock by him was September 16, 1899, so that more than five years elapsed before his purchase of stock and the filing of his amended bill, December 15, 1894, in which he asked to have his purchase of stock set aside. The last or engrossed bill was not filed until after the master, to whom the cause had been referred to take testimony and report, had made his report. This last amendment was made after the death of Charboneau.

Charboneau, having, as before stated, upon the making of his second loan of $500, given over his certificate of stock to Tolman, in the original bill he asked "that the defendants discover who holds the certificate for said five shares of stock; that the company may discover who appears, by its books, to be the owner of the stock and that the defendants be enjoined from selling or disposing of the five shares of stock."

The master found that when this stock was purchased Tolman agreed to buy it back and pay therefor $600. Such being the case, Charboneau had a right as a matter of contract to return the stock and obtain $600 therefor, even if he had not been induced by fraud to purchase the same. It does not appear from his evidence that Charboneau at the time of filing his original bill or when he filed his supplemental bill or at any time prior to the taking of the testimony in this cause, or the filing of the amendment of December 16, 1894, was informed as to, or understood the fraudulent conspiracy by which he had been induced to purchase this stock.

Such knowledge apparently came to him only during the progress of the cause. There was from time to time and by witness after witness unfolded the scheme devised by Tolman for obtaining usurious interest and selling practically worthless stock to unsuspecting purchasers.

We find no sufficient reason for setting aside the conclusions of the master as to the circumstances under which this stock was purchased by Charboneau and the time when he first became aware of the fraud practiced upon him. Such being the case, it does not appear that he was guilty of and estopped by laches from asking for and obtaining a setting aside of such purchase more than five years after it was made. Ex Parte Adamson, in re Collie, Law Reports, 8 Ch. Div. 807; Scherer v. Ingerman, Admr., 110 Ind. 428.

Nor does it appear that any of the defendants have been injured by the failure of Charboneau to sooner ask for a setting aside of his purchase.

If, as in Anderson v. The Chicago Trust & Savings Bank, 195 Ill. 343, it has appeared that knowledge of the facts constituting the fraud under which he was induced to purchase such stock had reached Charboneau any considerable time before he filed his bill to set aside such purchase, and especially before he filed either his original or his supplemental bill, he would have been estopped by such knowledge from asking, as he did December 15, 1894, that his purchase be set aside.

One who has been led into a transaction by means of a fraud, may, after a full knowledge of the fraud, elect to affirm the contract; and such an action once deliberately made, with full knowledge of all the facts, will prevent a shifting of his position and an attempt to rescind that which he has once affirmed. Anderson v. Chicago Trust & Savings Bank, 195 Ill. 341.

The numerous other questions presented and ably argued by appellants have been disposed of in the cases involving these defendants heretofore referred to by us.

The decree of the Circuit Court is affirmed.