THE CHICAGO TRUST AND SAVINGS BANK *et al.*

*v.*

DAVID M. BALL, Exr.

*Opinion filed February 17, 1904—Rehearing denied April 7, 1904.*

1. FRAUD—*what does not relieve party from electing to hold property notwithstanding fraud.* One who, with knowledge that a corporation is fraudulent, elects to assert ownership of its capital stock by filing a bill to compel its delivery to him, cannot relieve himself of the position so taken by a statement in his amended bill to rescind the transaction that the stock was worthless, where such fact must have been known to him in view of the charges made by him in the original bill.

2. The decision of the principal questions in this case is controlled by the decision in the case of *Anderson v. Chicago Trust and Savings Bank,* 195 Ill. 341.

*Chicago Trust and Savings Bank v. Ball,* 108 Ill. App. 321, reversed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

On February 26, 1892, Joseph Charboneau exhibited his bill in the circuit court of Cook county against the appellant the Chicago Trust and Savings Bank, Daniel H. Tolman and the Midland Company for injunction and relief. By a supplemental bill the appellants Cornelia T. Williams and Delmon W. Norton were made defendants. Pending the litigation, and after the bill and the amended bills had been filed and the evidence taken before the master, but before the hearing, Charboneau, the complainant, died, and upon the suggestion of his death, David M. Ball, the appellee, who was the executor of Charboneau's will, was substituted as complainant.

The original bill was verified, and alleges that on the 16th of September, 1889, the complainant received a letter from the Midland Company requesting him, if he was

in need of money, to call, and that about the latter date
he called on the Chicago. Trust and Savings Bank for a
loan of $750; that appellant Tolman was the president
of the bank; that Tolman informed complainant that he
would not loan money to complainant unless he would
take stock in the Midland Company; that Tolman then
exhibited to complainant a book which purported to show
the profits to be made by investing in the latter com-
pany; that the stock was worth $160, the par value being
$100 per share, and that Tolman told complainant that
if he would purchase stock in said company and did not
want it when paid for, Tolman would purchase it back;
that the Midland Company was organized for the pur-
pose of guaranteeing commercial paper of its stockhold-
ers, and was a sort of mutual benefit society, organized
upon the plan of building and loan associations; that
complainant was unacquainted with Tolman, the bank
and the Midland Company and knew nothing about either
of them, and believing the statements of Tolman to be
true, and relying thereon, purchased five shares of said
stock in said company at the price of $800, and gave to
the bank his judgment note for $750 and nine judgment
notes for $80 each, due and payable in one, two, three,
four, five, six, seven, eight and nine months, with interest
at eight per cent, and received from the bank, or Tolman,
or the company, the sum of $595 as the proceeds of his
loan; that complainant did not know from which of said
parties he received the loan, but the notes were made
payable to complainant's order and by him endorsed;
that $155 was deducted from the face of the loan to make
up $80 of the purchase price of the stock, $30 by reason
of the pretended guaranty of the Midland Company upon
the $750 note, and $45 discount to the bank; that the rate
of interest he was to pay was two and one-half per cent
a month in advance, besides purchasing the stock in said
company; that when said $750 note became due he re-
newed the same for ninety days, paying at the rate of

two and one-half per cent per month interest, in advance, on account of said renewal, and when the renewal note became due he paid the same in full; that by means of the premises the bank, Tolman and the Midland Company obtained from complainant $106 above the legal rate of six per cent interest, which they held for his use and benefit; that upon the payment of said $750 renewal note his certificate of stock was not delivered to him, but was retained until the last $80 note given on account of the purchase price of said stock in said company was paid; that he paid all of said notes, with eight per cent interest per annum; that on the 27th of March, 1891, he applied to Tolman for a loan of $500 and offered his stock in said company as collateral security; that said loan was made, and a judgment note for $500, payable four months after date to the order of the complainant, was drawn and endorsed and delivered to Tolman, for the bank, and that complainant received $450; $50 of the said loan being deducted for interest for four months at the rate of two and one-half per cent per month, and $20, as pretended by Tolman, for the guaranty of said company, and the balance for interest to the bank; that the latter note was renewed from time to time until about the 27th of January, 1892, at which time complainant applied to the bank for a further renewal, but advised Tolman that he could not pay $50 for such renewal; that after offers and counter-offers were made, the renewal was obtained by complainant paying $35 advance for a period of four months; that complainant had paid a large amount of illegal and usurious interest which should be applied upon the said $500 note, which was still outstanding and in possession of the defendants, or some of them. Complainant offered to pay the defendants, or such of them as might be the holder of said note, the amount justly and equitably due on accounting.

The bill then contains the allegation, upon the information and belief of complainant, that the Midland Com-

pany was planned, organized and incorporated under the laws of Illinois by Tolman for the purpose and with the intent, on the part of Tolman and the bank, of using the same, unlawfully and fraudulently, as a means of acquiring large sums of money illegally and fraudulently and without consideration, by the sale, forfeiture and re-sale of the stock of said company, and by compelling borrowers in the bank to become stockholders in the company, and to pay the rate of one per cent a month on moneys borrowed by them from the bank in addition to the illegal interest charged by the bank; that said company had been so illegally and fraudulently used by said Tolman and the bank, and that said company had never transacted any business which, by its charter, it was authorized to transact, nor was it intended, at the time of its organization by Tolman, that it should transact such business; that it had never pretended to transact any business other than guaranteeing commercial paper of its stockholders; that the company, the bank and Tolman were branches of one concern conducted and controlled by Tolman; that all moneys paid by complainant as compensation or illegal interest for the purpose of obtaining and renewing loans from the bank, which Tolman pretended were for the benefit of said company for guaranteeing paper, were in fact paid it at the request and under the requirements of Tolman and the bank, and that Tolman and the bank were in equity liable to account to complainant therefor, as well for other illegal interest paid the bank; that the bank and Tolman were principals and said company was their agent; that the bank, Tolman or said company had possession of complainant's note for $500, of date January 27, 1892, a large part of which had been paid, and that the defendants, or some of them, had also his certificate for five shares of the Midland Company stock, which he was entitled to possession of, and that said bank, Tolman and the Midland Company should be enjoined and restrained from

disposing of his said note or said certificate of stock of the Midland Company, and from entering judgment or taking other action upon said note. The prayer of the bill was that Tolman and the bank be held liable to complainant for the moneys paid for alleged guaranties of said company; that an accounting be had; that complainant's note be canceled and surrendered; that his certificate of stock in the Midland Company be surrendered and delivered to him; that injunction issue restraining defendants, etc., from selling, etc., the judgment note of $500 or causing judgment to be entered thereon, and from selling, assigning, forfeiting or otherwise disposing of his certificate of the capital stock in the Midland Company.

Answers were filed to the bill and supplemental bill, and nothing further seems to have been done until December 15, 1894, when complainant filed what is termed his engrossed bill, which states substantially all that is in the original bill or suit, and in addition thereto alleges that Tolman for years past has been president and general executive officer managing the business of the bank, and also president, treasurer and executive officer managing the business of the Midland Company; that prior to May, 1888, Tolman conceived the scheme of organizing a corporation to defraud the public, and for that purpose organized the Midland Company; that he first applied to the Secretary of State for a charter for a company to guarantee commercial paper, and was refused; that he caused three of his employees to make application to the Secretary of State, stating in the application the object of the company was to "secure information and furnish statements concerning the responsibility of persons and corporations, to conduct a merchandise commission business and to contract in respect thereto;" that Tolman, at the time, did not intend that the company should conduct such business, but intended it to do a business of guaranteeing commercial paper as his agent, for the purpose of cheating and defrauding persons out

of their money by selling them stock and pay money to said corporation for the pretended guaranties thereof; that said Tolman knew that said company was not authorized to guarantee anything; that the company was intended to be, and was used by Tolman and the bank as, a cover for usury and a device to assist them in getting usurious interest; that when complainant applied to the bank, through Tolman, its president, for a loan, he was informed he could not obtain the same without the guaranty of the Midland Company, and that he would be obliged to become a stockholder to obtain such guaranty; that said Tolman would sell five shares of stock; that the Midland Company was organized for the purpose of guaranteeing commercial paper and was authorized by its charter to guarantee such paper, and had been in the past doing a prosperous business, and its stock was worth $160 per share; that since its organization it had been earning money rapidly, and inside of a year would be worth $250; that it charged one per cent per month for guaranteeing paper of its stockholders, but the earnings of the company were so large that the stockholders would get back in dividends enough to make the interest very light; that it was organized on the plan of building and loan associations, for the mutual benefit of its stockholders; that he believed the statements and representations made by Tolman regarding the organization, objects, business and profits of the Midland Company to be true, and relied thereon; that he knew nothing about the Midland Company or its charter powers except as he was informed by Tolman; that Tolman did not show him the charter or books of the company; that the statements and representations made by Tolman to induce him to purchase such stock were false and fraudulent, and were known by said Tolman to be false and fraudulent at the time he made them; that said company did not do a profitable or prosperous business and was not authorized to guarantee commercial paper of

its stockholders or anyone else, but was organized as a fraudulent device and as the agent of Tolman and the bank, and that instead of said stock being worth $160 per share it was absolutely worthless; that proceedings were had in the superior court of Cook county, on the relation of the People, against said company, by which, on the 10th of February, 1894, a decree was entered arresting the charter of said company and prohibiting it from doing business.   The prayer of the bill is, that the bank, Tolman and said company be held parcels of one institution, and that Tolman and the bank be held liable for moneys paid by complainant for guaranties to said company; prays for an accounting, and that in the accounting he be given credit for $800 paid by him to Tolman for the certificate of stock in said company, and interest thereon; that said purchase be declared fraudulent and void and that said certificate be decreed to belong to said Tolman, and offers to permit him to retain possession of the same, and for other and general relief.

The cause was referred to the master, who reported, finding that the evidence supported the allegations of the amended bill.   Upon the coming in of the report the complainant further amended his bill on September 15, 1900, by alleging that he was ignorant of all the facts and circumstances respecting the Midland Company, its organization, charter powers, fraudulent character, stock and the value thereof, and relied entirely upon the misrepresentations and promises of Tolman and believed them to be true, and never learned of their falsity, etc., until a long time after, to-wit, immediately and within five years next preceding the filing of the original bill as to such matters as are therein stated, and immediately and within five years next preceding the filing of the amended and supplemental bill of complaint as to such matters as are therein stated.

Objections were filed to the report of the master and overruled and exceptions before the chancellor and by

him overruled, and a decree was entered finding that there was due complainant on account of the purchase price of the said stock, and the interest thereon, and for usurious interest and pretended charges of the guaranty company, $1777.50, and that there was due from complainant, upon his note, $753.20; awarded complainant execution against all the defendants, except Norton, for the amount decreed to him, and ordered that upon the payment of said amount there be paid to Norton therefrom the amount of the note and interest owing from complainant.   An appeal was prayed and prosecuted to the Appellate Court, which rendered judgment affirming the decree of the circuit court, and this appeal was prosecuted.

C. E. CLEVELAND, for appellants.

BULKLEY, GRAY & MORE, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This case and the case of *Anderson* v. *Chicago Trust and Savings Bank*, 195 Ill. 341, are, as far as we are able to determine from a careful review of the record, alike in all substantial features, and grow out of the same fraudulent conduct and combinations between Tolman and the appellant bank and the Midland Company that are shown in the cases of *Murray* v. *Tolman*, 162 Ill. 417, and *Tolman* v. *Coleman*, 104 Ill. App. 70.

That the organization of the Midland Company was an unmitigated fraud, for the purpose of enabling Tolman and the appellant bank to profit by usury under the pretense of guaranteeing commercial paper, is too well settled by the former opinions of this court above referred to, to require further comment, and that appellee's testate was one of the victims of that fraudulent combination cannot be doubted from the evidence contained in this record; but we cannot overlook the fact

that at the time of the filing of the original bill in this case, which was verified, appellee's testate knew and declared that said Midland Company was organized and being used for fraudulent purposes, and at the same time insisted that he was the owner of stock in said company, of which appellants, or some of them, had possession and which he called his stock, and prayed that appellants should be required to surrender the same up to him and be restrained and enjoined "from selling, assigning, forfeiting, canceling or otherwise disposing of his certificate of the capital stock in the Midland Company." It is true that in 1894, by what is termed his engrossed bill, the complainant enlarged upon the charges of fraud made in the original bill, and then, in effect, for the first time asked that the transaction be rescinded because thereof and offered to leave appellants in possession of said stock. But at that time it did not occur to the complainant to allege that he did not know, at the time of filing his original bill, that said Midland Company was a fraudulent organization, and, in fact, he could not have well so alleged, as in his original bill he had alleged that said Midland Company was a fraudulent organization, and was but an adjunct to and a part of the bank, and under the control and management of Tolman for the benefit of Tolman and the bank. In fact, the only new thing that he did allege by his amended bill that can be said to have been material, was the fact that the stock of the Midland Company was valueless at the time it was sold to him and that the representations as to its value were false and fraudulent. Although this same allegation was not contained in the original bill, that bill did contain the allegations that the company had never transacted any business which by its charter it was authorized to transact, and that it was not intended by Tolman that it ever should transact such business; that it had never transacted any business other than guaranteeing commercial paper, and that such guaran-

ties were only a pretense and a cloak used by Tolman and the bank for exacting illegal and usurious interest; that the moneys paid to Tolman by complainant as compensation or illegal interest for the purpose of obtaining and renewing loans from said bank, which Tolman pretended were for the benefit of said company for guaranteeing paper, were in fact paid at the request of the bank.

If, then, the company had never done any business which it was authorized to do, and if all the business it had ever done was to aid the bank in collecting illegal interest, and these facts were known to the complainant when he filed his original bill, or he was so informed and believed, he must have known then that the stock of a corporation so conducting business was worthless. He must have known that the stock of any corporation not owning property,—as it was not pretended that this corporation did own any,—but depending upon the conduct of business for its value, and doing no business it was authorized to do, but being engaged only in a fraudulent scheme to aid a bank in collecting illegal interest, had no value and could have none; and with such knowledge or information he insisted that he was the owner of the stock of said company, and that such stock was in the possession of appellants, or some of them, and that he was entitled to have the certificate for such stock restored to him and desired to have appellants enjoined from canceling or assigning the same. It would seem that the mere statement, afterwards added, that the stock was worthless, would not be sufficient to relieve appellee's testate from the position of one who, with knowledge of the fraud, had elected to assert ownership to the property thus imposed on him.

The last amendment of the bill, of September 15, 1900, was upon the suggestion of the master, contained in his report, that the bill lacked an allegation upon the point of the time of knowledge of the fraud, and when the allegation is looked to, we find that it is in such general

language,—the language being, "immediately and within five years next preceding" the filing of the amended and supplemental bill,—that little weight can be attached to it, and so far as we have been able to determine from the record there is no evidence whatever to support such amendment. The case seems to us to be upon all-fours with the *Anderson case* and to be controlled by it. In the latter case we held that the attempt to rescind the purchase of the stock must be treated as first made at the time of the amendment of the bill, in 1894, which was the same time the bill in question was amended, and the view was there expressed that the amendment could not be carried back to the time of the filing of the original bill. That view seems applicable to the case at bar.

We find that appellee's testate paid $222.63 to Tolman under the pretense of the latter that such sum was a guaranty fee of the Midland Company, and we think a decree should be rendered allowing appellee to offset that sum against the note and interest which he owes and is held by appellants, and that that is the limit of the relief that can be granted him under the facts as shown by this record.

Appellants urge that the costs of the court below should be apportioned, but we do not think sufficient appears in the record to justify us in entering such order.

The judgment of the Appellate Court and the decree of the circuit court of Cook county are, and each is, reversed, and the cause is remanded to the circuit court of Cook county with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded, with directions.*