THE SUPREME LODGE KNIGHTS OF PYTHIAS, Defendant in Error, *vs.* JOHN A. HINSEY *et al.*—(ERASTUS SIPPERLY and ARROLYN M. BROOKS, Plaintiffs in Error.)

*Opinion filed October 26, 1909.*

1. FRAUD—*a defrauded party is bound by his election of remedies.* One who has been defrauded by the use of his funds for the unauthorized purchase of property may insist upon taking the property or he may disclaim title and seek other remedies, but he can not insist upon inconsistent or repugnant rights, and if he once makes an election of remedies he is bound by it.

2. SAME—*knowledge of facts is essential to election of remedies.* It is necessary to constitute an election of remedies by a defrauded party that he shall have knowledge of the material facts, and if a suit is instituted by him without such knowledge it does not constitute such election.

3. SAME—*what is not such fraud by complainant as precludes relief in equity.* The failure of the complainant in a chancery proceeding for relief against the defendants who had fraudulently used the complainant's funds to invest in lands, to aver in the amended bill that the complainant, by its solicitor, had procured a conveyance from one of the defendants for part of the lands, does not amount to fraud by the complainant which bars relief in equity.

4. JUDICIAL SALES—*when party cannot complain that land was sold without right of redemption.* A defendant to a proceeding to enforce a lien against land on account of the fraud of such defendant and others, and who has never had any legal or equitable title to the property, which was ordered sold not as his property for the satisfaction of a debt against him, but as property fraudulently purchased with the money of the complainant and as a means of recovering such money, cannot complain that the property was sold without a right of redemption.

5. SAME—*when a decree against a bona fide purchaser is not wrongful.* A decree in a proceeding against persons who had fraudulently used complainant's money to buy land is not wrongful as to a *bona fide* purchaser from such persons, where its only effect, as to such purchaser, is to require her to carry out her contract at the suit of the complainant, whose money paid for the property which she purchased.

6. ACCOUNTING—*when it is not error to fail to credit amount of checks.* Failure of the court, in stating an account, to credit the amount of certain checks by the defendant to the complainant

is not error, where the checks were given before the execution of certain trust deeds which fixed the amount of the then existing indebtedness, and where the defendant does not show that the checks were given on account of the transaction involved and not on account of other transactions the parties had had.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding.

ROBERT R. BALDWIN, for plaintiffs in error.

CARLOS S. HARDY, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

During the transactions in question in this case and hereinafter recited, John A. Hinsey was president and Henry B. Stolte was secretary of the board of control of defendant in error, the Supreme Lodge Knights of Pythias, a corporation organized under an act of Congress of the United States for fraternal and benevolent purposes and forbidden to engage in any business for gain. The board of control had the management of the funds of the insurance department conducted by the corporation under the name of the "Endowment Rank," with authority to hold and disburse the fund, and, when the amount in the fund would justify such action, to direct the investment, or part of it, in readily convertible securities. On April 4, 1895, Hinsey and Stolte, as president and secretary of the board, drew a warrant on the First National Bank of Chicago, depositary of the fund, for $8000, payable to the order of Erastus Sipperly, one of the plaintiffs in error, and Sipperly drew that amount from the bank. With the money thus secured Sipperly purchased from the Illinois Trust and Savings Bank a certificate of sale executed by Thomas Tay-

lor, master in chancery of the circuit court of Cook county, dated December 27, 1894. The certificate was assigned by the bank to the board of control in consideration of $7352.25, and the rest of the money was expended in redemption from tax sales and in depositing with the master an amount to cover taxes that would become due before the period of redemption would expire. No obligation to re-pay the money was given by anyone. Soon afterward Sipperly applied to William Garnett, owner of the equity of redemption, and purchased the same for $900, taking a quit-claim deed to Wallace D. Millard, a person without property or means, an employee of the Chicago, Milwaukee and St. Paul Railroad Company under Hinsey, who was general claim agent of that company. The deed to Millard was made October 31, 1895, and the consideration of $900 was paid out of the proceeds of a warrant for $1000 drawn by Hinsey and Stolte, as president and secretary of the board of control, on the First National Bank. Millard executed a declaration of trust dated October 30, 1895, in which he declared that the conveyance to him by Garnett of the equity of redemption was made and was then held by him in trust for the use and benefit of Hinsey, Stolte and Sipperly, and that he had no interest therein. On November 11, 1895, Hinsey and Stolte, as president and secretary, assigned the master's certificate, in the name of the board of control, to Millard, who surrendered it to the master on March 28, 1896, and received a deed of the property. An entry was made on the investment journal of the endowment rank indicating a loan of $8000 on a certificate of redemption, together with certificates of tax sales, special assessments and certificates of deposit for redemption, describing the property in question. Three days after the master's deed to Millard he quit-claimed the property on April 1, 1896, for no consideration of any kind, to Elmer L. Parker, a claim agent of the railroad company working under Hinsey, and on April 6, 1896, Parker made a trust

deed to Charles T. Allyn as trustee, with Stolte as succes-
sor in trust, purporting to secure the defendant in error in
the sum of $9000, with six per cent interest, conveying a
part of the premises bought with its money and described
in the master's deed, but leaving out a strip of land 60 feet
wide and 1906.87 feet long, extending north and south
along an alley, and divided into three lots. Parker was not
only worthless from a financial standpoint, but he did not
expect to pay the notes and it was not understood that he
would do so. The notes and trust deed were accepted by
Hinsey and Stolte for the board of control in place of the
$8000 and $1000 taken from the funds and appropriated
by Hinsey, Stolte and Sipperly, and an entry was made on
the investment journal of the supposed loan to Parker. On
April 24, 1896, the board of control at a meeting, in igno-
rance of the facts, approved the pretended loan. Sipperly
negotiated with Charles F. Swigart for another piece of
property, and on April 11, 1896, Hinsey and Stolte, as
president and secretary, drew a warrant on the bank for
$10,000 in favor of F. R. Baldwin, a clerk in the employ
of Sipperly, and Baldwin endorsed the warrant and de-
livered it to Sipperly. Baldwin was used as Millard and
Parker were,—merely as a dummy. Sipperly paid $8500
out of the $10,000 for the land and used the remainder in
payment of taxes and other charges thereon. The property
was conveyed to Parker and he executed a declaration of
trust on April 25, 1896, declaring that he held all the prop-
erty conveyed to him, in trust for Hinsey, Stolte and Sip-
perly. Parker laid out the tract of land last purchased, with
that which had been omitted from the first trust deed, into a
subdivision named "Erastus Sipperly's subdivision," divided
into four blocks and containing eighty lots. May 25, 1896,
Parker executed a second trust deed to Charles T. Allyn as
trustee, with Stolte as successor in trust, to secure the $10,-
000 used in buying the last piece of property, conveying
fifty of the lots and omitting thirty, the title of which re-

mained in Parker. After the execution of that trust deed Parker conveyed the thirty lots omitted to Stolte, who conveyed ten of the lots at the direction of Sipperly and held the remaining twenty for himself and Hinsey. A minute of the supposed $10,000 loan was entered on the investment journal of the defendant in error. The property was all bought with funds of the endowment rank, and by their manipulation, Hinsey, the president, Stolte, the secretary, and Sipperly, their confederate, appropriated thirty lots to their own use without paying a dollar for them. On November 25, 1895, Millard had given Sipperly written authority to sell lots in the first purchase and to make contracts with purchasers, and on June 1, 1896, Parker gave Sipperly similar authority with reference to the lots included in the two trust deeds. A number of lots were sold to innocent purchasers in ignorance of the nature of the transactions or the rights of the defendant in error. The board of control, aside from the two officers, was in ignorance of the facts, but upon learning the same a bill was filed in the name of the defendant in error, against Hinsey, Sipperly, Stolte, Parker and others, asking to have the various conveyances set aside as against the complainant, except as to property which had been sold to *bona fide* purchasers without notice, and for a money decree against the principal defendants guilty of the alleged frauds, for such sums as they had received by reason of conveyances to innocent purchasers. The bill was afterward twice amended, and the amended bill, upon which the cause was heard, stated the facts in substance as above and prayed that an accounting might be taken of the moneys withdrawn from the fund; that the defendants who were liable to the complainant be required to pay the amount due the complainant, and in default thereof the premises be sold either under the deeds of trust or otherwise, as the court might determine, to satisfy the amounts so found due and costs; that the sale be without redemption except as to portions sold

to innocent purchasers and that the complainant have a
decree for any deficiency. Arrolyn M. Brooks, one of the
plaintiffs in error, was a purchaser of three lots in con-
sideration of $1350, of which $25 was paid in cash and the
balance was represented by her notes. By her answer she
set out her contract and the *bona fide* character of her pur-
chase. The answers of Hinsey, Parker and Sipperly de-
nied the alleged fraud and averred that all the transactions
were *bona fide,* with the knowledge of the board of control,
and that the moneys taken from the fund were loaned.
The cause was referred to a master·in chancery and was
heard on exceptions to his report. On March 22, 1902,
after the bill was filed, Stolte, who has since died, conveyed
for the use of the complainant seventeen lots of which he
still held the title. During the hearing counsel for com-
plainant produced in the court the notes of Mrs. Brooks
which had been delivered to him by Stolte, disclaimed
any interest in the same and offered to surrender them to
the proper owner. The court entered a decree finding the
amount due from Hinsey, Sipperly and the administratrix
of Stolte, and ordered that if the same, with interest at
five per cent and costs, should not be paid within ninety
days, the real estate not previously disposed of to innocent
purchasers for value should be sold without the right of
redemption, and that for any deficiency a decree should be
entered against said defendants and that the trust deeds
and the notes secured thereby should be canceled, satisfied
and released. Hinsey, Sipperly and Mrs. Brooks sued out
a writ of error from the Appellate Court for the First Dis-
trict to review the decree and Parker appealed from it to
the same court. The appeal was consolidated with the writ
of error. The other parties whose names had been used as
plaintiffs in error in suing out the writ were severed and the
writ was prosecuted by those who sued it out. The Appel-
late Court affirmed the decree, and the writ of error in this
case was sued out from this court to review the judgment

of the Appellate Court. Hinsey and Parker refused to assign errors on the record of the Appellate Court, stating that after judgment of the Appellate Court an agreement was entered into by which they quit-claimed all interest in the property in controversy to defendant in error, so that they had no legal or equitable interest in the subject matter of the suit. They were severed on the motion of Sipperly and Mrs. Brooks, who alone prosecute the writ of error in this court.

The above recital of the facts is all that is required to show that fraud was committed by Hinsey, Stolte and Sipperly by abstracting funds from the insurance department of the complainant for the purpose of investment for their own benefit and falsely making the transactions appear as loans. There is no further controversy on that subject in this court, but Sipperly alleges several reasons for a reversal of the judgment of the Appellate Court, the first of which is that the complainant, by filing the original bill, sought to recover the property, and was thereby estopped from obtaining a decree against him for its money invested in the property. It is doubtless true that one who has been defrauded by the use of his funds for the unauthorized purchase of property may insist upon taking the property if he regards that course for his benefit, or he may disclaim title and seek other remedies. He may proceed against the property substituted for the fund but cannot insist upon inconsistent or repugnant rights, and if he has once made an election he will be bound by it. (2 Story's Eq. sec. 126; *Anderson* v. *Chicago Trust and Savings Bank,* 195 Ill. 341.) He may follow the money into the land as a trust estate; (*Rice* v. *Rice,* 108 Ill. 199; *First Nat. Bank* v. *Leech,* 207 id. 215; *Verble* v. *Dillow,* 218 id. 537;) and in the latter case a decree was affirmed which ordered the money paid or the land sold and the proceeds applied to the payment of the amount due. It is necessary, however, to an election of remedies that the party defrauded should have

knowledge of the material facts. (*Garrett* v. *Farwell Co.* 199 Ill. 436.) If a suit is instituted without such knowledge it will not constitute an election of remedies. In *Anderson* v. *Chicago Trust and Savings Bank, supra,* the bill set up all the material facts and sought to have the shares of stock delivered to the complainant, and by that means the stock was tied up for two years until it was found to be worthless, when it would have been inequitable to permit the complainant, by amendment, to rescind the sale and seek an inconsistent remedy. The purpose of a court of equity is to make a defrauded party whole, and if such a party were compelled to choose between affirmance of a fraudulent conversion of his money into land or a personal judgment against the trustee, it might often result that a part of the fund would be lost. The property might not be sufficient to reimburse the party for his loss and the personal responsibility of his trustee might not extend to the full amount taken. In this case the complainant by the original bill did not affirm the transactions but asked the court to set aside the assignment to Millard and all the subsequent deeds and trust deeds, to authorize the master in chancery to convey the property to complainant except so far as other parties had acquired good title to portions of the land, and that the defendants who were parties to the fraud should be decreed to pay such sums as might be found due complainant by reason of their fraudulent acts, and such additional sums as the court might find due by reason of conveyances to innocent purchasers. That prayer was for a decree against the parties guilty of the fraud for the loss to the complainant after deducting the value of the property. The petition for the amendment of the original bill set out that since it was filed the complainant had learned that all the property not included in the two trust deeds had, prior to the filing of the original bill, passed into the hands of innocent purchasers, and it set out the fact of a large number of persons claiming some interest in the prop-

erty. The prayer was changed so as to ask for an accounting, a lien against the land into which the complainant's money went and a personal decree for any deficiency. Under the facts we hold that the complainant was not estopped by the allegations of the original bill.

It is next contended that the complainant did not come into a court of chancery with clean hands. The particular thing pointed out is the failure to allege in the last amended bill that the complainant had previously procured Stolte to deed to its solicitor, for its benefit, the seventeen lots of which he held title, which does not show the complainant guilty of any fraud or wrong which would prevent relief in equity.

The next proposition of Sipperly is, that it was error to decree that the property be sold without a right of redemption. The sale was not to be for any debt or obligation of Sipperly in the statutory sense or any proper sense. It was for the enforcement of a lien on account of the fraud and wrongful conduct of Sipperly and others. Sipperly never promised to pay anything, but procured the notes and trust deeds to be made by a dummy, and he never had any legal or equitable title to the property. It was ordered sold, not as his property for the satisfaction of a debt against him, but as property purchased with the money of the complainant and as a means of recovering such money.

It is next argued that the court erred in not finding the transactions to be usurious. Counsel does not make it clear on what ground he claims there was usury and we are unable to discover any basis for such a claim. The notes secured by the trust deeds drew six per cent interest, and there is an intimation that if the property was held for the use of the complainant in addition to the interest reserved, it would amount to more than legal interest. If that is the position of counsel it is not worthy of comment.

Complaint is made as to the action of the court in relation to items of account, and it is alleged as error that the

court did not find the value of the seventeen lots deeded by Stolte for the use of complainant and credit the defendants with their value of the date of the deed. Stolte had mortgaged the lots to, secure ten promissory notes for $200 each, and the complainant refused to accept the lots with an assumption of the mortgage debt. We find no evidence of any value of the lots above the encumbrance and it does not appear that they were considered of sufficient value to justify their redemption. Counsel does not point out any evidence showing value above the encumbrance which ought to have been credited on the account.

It is also claimed to be error not to have allowed the amounts of three checks given by Sipperly to the complainant in 1895, before the execution of the trust deeds. There were two other real estate deals of a similar nature relating to other property, and it does not appear that the checks were given on account of these transactions and not on account of one of the others. The burden was on the defendants to prove payment, but at any rate the checks were given before the trust deeds, which fixed the amount of the then existing indebtedness, and the court did not err in failing to credit them.

Complaint is made of the failure to allow some other items, but the complaints are clearly groundless and do not require notice in detail.

Arrolyn M. Brooks claims that she has been wronged in some way, but all that was required of her was to carry out her contract at the suit of the party whose money paid for the property which she got. Her counsel says that the court erred in decreeing a sale of her property at the instance of a complainant not shown to be the owner of her notes, but the notes were brought into court by the solicitor for the complainant to be surrendered, and she was fully protected.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*